UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                 :

SALOMON APARICO JIMENEZ,         :
                                 :

                    Petitioner,    :

                                 :

        - against -              :

                                 :

THOMAS DECKER, et al.,          :
                                 :

                Respondents.  :

--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/3/2021

21-CV-880 (VSB)

**OPINION & ORDER**

VERNON S. BRODERICK, United States District Judge:

        Petitioner Salomón Aparicio Jiménez ("Petitioner" or "Aparicio") is a citizen of Mexico

currently in removal proceedings before the Executive Office for Immigration Review, Board of

Immigration Appeals ("BIA" or the "Board").  Aparicio brings this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2441, 28 U.S.C. § 1651, and Article I, Section 9, of the

Constitution of the United States for an order directing Respondents Thomas Decker, Peter T.

Gaynor, Jeffrey A. Rosen, and Carl E. Dubois (collectively, "Respondents"), to:  (1) refrain from

removing Petitioner from the Court's jurisdiction during the course of habeas proceedings; and

(2) release Aparicio from custody on his own recognizance or on reasonable conditions of

supervision, or, in the alternative, provide Aparicio with a bond hearing at which Respondents

bear the burden of establishing by clear and convincing evidence that Aparicio's continued

detention is justified.  Aparicio also moves for a temporary restraining order and preliminary

injunction seeking essentially the same relief.

        For the reasons stated on the record during the February 25, 2021 hearing and below,

because I find that Aparicio was denied due process as he suffered prolonged detention without a

bond hearing at which the Government bore the burden of establishing that he should be denied bail, Aparicio's petition is GRANTED to the extent that he seeks a bond hearing with the burden on the Government to justify by clear and convincing evidence his continued detention based upon Aparicio's danger to society or risk of flight.

## I.      Background and Procedural History[1]

On February 1, 2021, Aparicio filed the instant petition for a writ of habeas corpus requesting an order (1) enjoining Respondents from moving him from the New York City area while habeas proceedings are pending, and (2) directing Respondents to immediately release him from custody, or, in the alternative, ordering Respondents to provide him with a hearing before an impartial adjudicator at which Respondents bear the burden of establishing by clear and convincing evidence that continued detention is justified.  (Doc. 1, Pet. 32–33.)[2]  On February 3, 2021, Aparicio filed the instant motion for an order to show cause, preliminary injunction, and temporary restraining order ("PI Motion").  (Doc. 4, Pet.'s Mem.)[3]  The relief requested in Aparicio's PI Motion is virtually identical to the relief requested in his habeas petition.  (Pet.'s Mem. 32.)

On February 12, 2021, Respondents filed a memorandum in opposition to both Aparicio's habeas petition and his PI Motion.  (Doc. 13, Resp. Opp. Mem.)[4]  In support of their opposition papers, Respondents also filed a declaration by United States Immigration and

---

[1] The facts contained in this section and throughout this Opinion & Order are taken from the papers submitted in support of and opposition to Petitioner's motions.

[2] "Pet." refers to Aparicio's petition for the writ of habeas corpus, filed February 1, 2021.  (Doc. 1.)

[3] "Pet.'s Mem." refers to Aparicio's memorandum in support of his motion for an order to show cause, preliminary injunction, and temporary restraining order, filed February 3, 2021.  (Doc. 4.)

[4] "Resp. Opp. Mem." refers to Respondents' memorandum in opposition to Aparicio's petition for a writ of habeas corpus and PI motion, filed February 12, 2021.  (Doc. 13.)

Customs Enforcement ("ICE") Deportation Officer Kevin King, (Doc. 12, King Decl.),[5] and a Return with accompanying exhibits, (Resp. Return).[6]  Aparicio waived his reply.  (Doc. 15.)

Aparicio entered the United States in 2000 without inspection.  (Pet. ¶ 21.)  On November 22, 2008, Aparicio was arrested by the Yonkers City Police Department and charged with driving while intoxicated ("DWI"), in violation of the New York Vehicle and Traffic Law ("VTL") § 1192(3).  (King Decl. ¶ 5; Resp. Return, Ex. 1, at 4–5.)  On August 31, 2009, Aparicio pled guilty to the reduced charge of driving while ability impaired by the consumption of alcohol ("DWAI") in violation of VTL § 1192(1).  (King Decl. ¶ 6; Resp. Return, Ex. 1, at 5.)

On January 22, 2020, Aparicio was arrested by the Westchester County Department of Public Safety for driving while intoxicated in violation of VTL § 1992(3), aggravated unlicensed operation of a motor vehicle in the third degree, aggravated DWI, as well as three other driving infractions.  (King Decl. ¶ 7; Resp. Return, Ex. 1, at 3–4.)  On January 31, 2020, Aparicio was arrested by the Yonkers City Police Department and charged with Petit Larceny, in violation of New York Penal Law § 155.25.  (King Decl. ¶ 8; Resp. Return, Ex. 1, at 3.)  The 2020 charges against Aparicio remain pending.  (King Decl. ¶¶ 7–8.)  The Government states that ICE has no indication in its records of receiving a request to produce Aparicio for hearings in any of his criminal cases, and that it would ordinarily accede to such requests.  (Resp. Opp. Mem. 4 n.1; King Decl. ¶¶ 30, 29.)

On February 12, 2020, ICE officers arrested Aparicio at his home in Yonkers, New York, charging him with inadmissibility under § 8 U.S.C. 1182(a)(6) as a noncitizen present in the

---

[5] "King Decl." refers to the declaration of Kevin King in support of Respondents' opposition to Aparicio's petition for a writ of habeas corpus and PI Motion, filed February 12, 2021.  (Doc. 12.)

[6] "Resp. Return" refers to Respondents' Return to Aparicio's petition for a writ of habeas corpus and PI Motion, filed February 12, 2021.  (Doc. 11.)

United States without admission or parole. (Pet. ¶ 22; *see* Resp. Return, Ex. 2, Notice to Appear.) ICE detained Aparicio as a matter of discretion pursuant to 8 U.S.C. § 1226(a), and transferred him to Orange County Jail in Goshen, New York, where he remains detained. (Pet. ¶ 22; Resp. Return, Ex. 3, Notice of Custody Determination, dated February 12, 2020; Ex. 4, Notice to EOIR: Alien Address, dated February 13, 2020.)

According to the affirmation of Aparicio's counsel, Edgar Fankbonner, Orange County Jail is approximately 90 minutes from New York City by car. (Doc. 4-1, at ¶ 4.) Because Aparicio was detained miles from his community, he faced significant obstacles to conferring with family and counsel and accessing records relevant to his bond hearing and merits defenses. (Pet.'s Mem. 19; Doc. 4-1, at ¶ 4.)

In addition, the software used by the jail contractor to provide videoconference services for prisoners to communicate with their attorneys ceased to function properly and remains unrepaired. (Doc. 4-1, at ¶ 4.) As such, it is virtually impossible for attorneys to communicate with clients at the jail unless clients initiate telephone calls to their attorneys—and these calls are brief and expensive. (*Id.*) As a result, counsel's communications with Aparicio were limited and inconsistent, and Aparicio was unable to offer fulsome assistance to counsel in preparing his own defense. (*Id.*)

Aparicio requested a bond hearing to review his custody determination on February 12, 2020. (Resp. Return, Ex. 3, at 2.) On February 13, 2020, ICE commenced deportation proceedings against Aparicio by serving him with a Notice to Appear ("NTA"). (King Decl. ¶ 10.)

On February 25, 2020, Aparicio appeared by videoconference for an initial master calendar hearing before an immigration judge ("IJ"). (King Decl. ¶ 11.) Aparicio withdrew his

bond request, and the IJ adjourned the case to another master calendar hearing to be held in March 12, 2020 in order to permit Aparicio to obtain counsel.  (*Id*.)

On March, 12, 2020, Aparicio appeared by videoconference before an IJ, represented by counsel who appeared in person, for a second master calendar hearing.  (*Id*. ¶ 12.)  Counsel for Aparicio requested a one-month adjournment to prepare the case and review ICE's evidence in support of its NTA, and the IJ granted an adjournment of the master calendar hearing until April 16, 2020.  (*Id*.)

At the third master calendar hearing on April 16, 2020, Aparicio entered pleadings on the NTA, admitted the allegations, and conceded the charge of removal.  (*Id*. ¶ 14.)  The IJ granted and adjourned the case until an April 24, 2020 master calendar hearing for Aparicio to file applications for relief from removal.  (*Id*.)

On or about March 31, 2020, counsel for Aparicio filed a motion for bond determination pursuant to § 1226(a)(2), (Pet. ¶ 23; King Decl. ¶ 13),[7] and on April 24, 2020, filed a packet of evidence in support of Aparicio's bond application, (King Decl. ¶ 15).  Specifically, Aparicio proffered the birth certificate of his daughter who is a United States citizen, proof of his long-term residence and employment in Westchester County, character letters, and other evidence of his good moral character and ties to the community.  (Pet. ¶ 23.)  ICE, represented by the United States Department of Homeland Security (DHS) Office of the Chief Counsel, opposed Aparicio's motion with a rap sheet reflecting his early 2020 arrests and 2009 DWAI conviction. (*Id*.; *see* Resp. Return, Ex. 1.)

On April 30, 2020, Aparicio appeared by videoconference for his fourth master calendar

---

[7] 8 U.S.C. § 1226(a)(1)–(2) provides that when the alien detained pursuant to the provision is not a criminal alien, the Attorney General may continue to detain her or may release her either on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General" or on "conditional parole."

hearing, during which the IJ granted Aparicio's request for an adjournment until May 18, 2020 to file an application for relief from removal.  (King Decl. ¶ 16.)  The IJ then went on the bond record to hold a bond hearing, but counsel for Aparicio withdrew the bond request, noting that she had not been able to meet with Aparicio to prepare for the bond hearing due to the COVID-19 pandemic.  (*Id*.)  In light of this withdrawal, the IJ did not proceed with a bond hearing.  (*Id*.)

On or about May 13, 2020, counsel for Aparicio filed a renewed motion for a bond hearing.  (*Id*. ¶ 17.)  A bond hearing was scheduled for May 18, 2020, the same date as the next scheduled master calendar hearing.  (*Id*.)  At this hearing, Aparicio appeared by videoconference, and counsel for Aparicio requested another continuance, due to purported difficulties obtaining documentation in support of Aparicio's application for relief from removal.  (*Id*. ¶ 18.)  The IJ granted Aparicio's request and scheduled another master calendar hearing for June 4, 2020.  (*Id*.)  Counsel for Aparicio also withdrew the new request for a bail hearing, again citing difficulties obtaining documentation in support of Aparicio's bond request.  (*Id*.)  The IJ accordingly did not proceed with a bond hearing.  (*Id*.)

On June 4, 2020, Aparicio appeared by videoconference with counsel appearing telephonically for a fifth master calendar hearing.  (*Id*. ¶ 19.)  At this hearing, counsel submitted an application for relief from removal (Form EOIR-42B) and requested a continuance to submit additional evidence in support of the application, noting that she was having difficulty obtaining that evidence due to the COVID-19 related quarantine.  (*Id*.)  The IJ granted Aparicio's request and scheduled another master calendar hearing for June 25, 2020.  (*Id*.)

On June 25, 2020, Aparicio appeared by videoconference with counsel appearing telephonically before an IJ for a sixth master calendar hearing.  (*Id*. ¶ 20.)  Counsel for Aparicio requested another continuance.  (*Id*.)  The IJ denied Aparicio's request, and instead scheduled the

case for an individual merits hearing on Aparicio's application for relief from removal for August 5, 2020.  (*Id*.)

On July 14, 2020, counsel for Aparicio filed a third motion for a bond hearing.  (*Id*. ¶ 21; Resp. Return, Ex. 5.)  The IJ scheduled and conducted a bond hearing on July 23, 2020.  (King Decl. ¶¶ 21–22; Pet. ¶ 2; Resp. Return, Ex. 6.)  At that hearing, IJ Denise Hinds Roach heard argument from Aparicio in favor of release and from ICE against release.  (King Decl. ¶ 22.)  Judge Roach also reviewed the evidence that both sides had submitted on the bond record.  (*Id*.)  At the conclusion of the hearing, Judge Roach denied Aparicio's application for bond determination, finding that Aparicio did not meet his burden of proving that he is not a danger to society.  (*Id*.; Pet. ¶ 2; Resp. Return, Ex. 7.)  In rendering this decision, Judge Roach cited Aparicio's 2009 Yonkers City Court conviction for driving while ability impaired by alcohol, and arrests on January 22 and 31, 2020 for driving while intoxicated and petit larceny, respectively.  (Pet. ¶ 2.)  Judge Roach issued an oral bond decision on the record on July 23, 2020, and subsequently issued a written decision on September 1, 2020.  (King Decl. ¶ 22; Resp. Return, Ex. 9.)  On July 27, 2020, at the request of Aparicio's counsel, the IJ adjourned the merits hearing to September 14, 2020.  (King Decl. ¶ 23.)

Aparicio appealed the IJ's bond decision to the BIA on or about August 17, 2020.  (King Decl. ¶ 24; Resp. Return, Ex. 8.)  The BIA issued an initial briefing schedule setting a deadline of September 29, 2020, and extended this deadline to October 20, 2020 upon request by counsel for Aparicio.  (King Decl. ¶ 24; Resp. Return, Ex. 10.)  Aparicio filed his brief with the BIA on October 19, 2020.  (King Decl. ¶ 24.)  The Board dismissed Aparicio's appeal on January 14, 2020 and affirmed the decision of Judge Roach.  (*See* Doc. 4-2.)  In its decision the Board relied on *Matter of Siniauskas*, 27 I. &N. Dec. 207 (B.I.A. 2018), for the proposition that "driving

under the influence is a significant adverse consideration in determining whether an alien is a danger to the community in bond proceedings," and reasoned that "considering the recency of the respondent's underlying arrest, as well as the previous DUI conviction and seriousness of alcohol-related offenses, we conclude that the Immigration Judge correctly determined that the respondent had not met his burden of establishing that he does not present a danger."  (Doc. 4-2, at 1, 2.)[8]

On September 14, 2020, Aparicio appeared by videoconference with counsel appearing by telephone for a merits hearing before IJ Charles Conroy.  (King Decl. ¶ 25.)  Judge Conroy heard testimony from Aparicio in support of his application for relief from removal, and issued an oral decision denying the application for relief and ordering Aparicio removed from the United States to Mexico.  (*Id.*)  Judge Conroy issued a written decision on October 16, 2020.  (*Id.*; Resp. Return, Ex. 11.)  On October 14, 2020, Aparicio's counsel filed a notice of interlocutory appeal of Judge Conroy's September 14, 2020 oral decision on the merits with the BIA.  (King Decl. ¶ 27.)  The Board dismissed the interlocutory appeal on November 17, 2020 as moot in light of Judge Conroy's October 16, 2020 written decision.  (*Id.*)

On or about September 28, 2020, counsel for Aparicio filed a motion to reopen Aparicio's removal proceedings, requesting that Judge Conroy consider certain late-filed documents in connection with Aparicio's application for relief from removal.  (*Id.* ¶ 26.)  ICE filed an opposition to that motion on October 9, 2020, and Aparicio filed a reply in further support of the motion of October 14, 2020.  (*Id.*)  On November 18, 2020, Judge Conroy issued a written decision denying Aparicio's motion to reopen.  (*Id.*)

---

[8] The Board's reference to Aparicio's "previous DUI conviction" is erroneous.  As discussed above, Aparicio was charged with DUI but only pled guilty to the reduced charge of DWAI.  (King Decl. ¶ 6; Resp. Return, Ex. 1, at 4–5.)

On November 19, 2020, Aparicio filed a notice of appeal of the Judge Conroy's October 16, 2020 written merits decision with the BIA.  (*Id.* ¶ 28; Resp. Return, Ex. 12.)  The Board issued a briefing schedule setting an initial deadline of January 8, 2021 for the parties to file their respective briefs on the merits appeal, which it extended until January 29, 2021 upon request by Aparicio's counsel.  (King Decl. ¶ 28; Resp. Return, Ex. 13.)  On January 29, 2021, Aparicio filed a merits appeal brief; to date, the appeal remains pending.  (King Decl. ¶ 28.)

## II.   <u>Discussion</u>

 "[A]n alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Section 1226 provides for the release on bond for all persons—except those subject to mandatory detention as criminals or terrorists, or those who are arriving aliens—unless there is a finding that the alien is either a threat to the public safety, a threat to national security, or is likely to abscond.  *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976).

Beginning in 1999, the BIA began placing the burden on the arrested individual to demonstrate, to the satisfaction of the arresting officer, that release would not pose a danger to property or persons and that the individual is likely to appear for any future proceedings to bond hearings conducted by immigration judges under § 1226(a).  *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999); *see, e.g.*, *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804, 807 (B.I.A. 2020) (affirming IJ's denial of bond based on respondent's failure to meet his burden to establish that he would not present a significant risk of flight); *Siniauskas*, 27 I. & N. Dec. at 207 (stating that an alien requesting a redetermination of his or her custody status "must establish to the satisfaction of the Immigration Judge and the Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight");

*Matter of Fatahi*, 26 I. & N. Dec. 791, 795 n.3 (B.I.A. 2016) (stating that the Board has "consistently held that aliens have the burden to establish eligibility for bond while proceedings are pending"). Under this regime, the Government is not obligated to make any showing that a noncitizen is a danger to the community or a flight risk. *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020) (hereinafter *Velasco Lopez II*). Although this allocation of the burden of proof is now routine, "[t]he BIA itself acknowledges that § 1226(a) contains no such requirement." *Id.* (citing *Adeniji*, 22 I. & N. Dec. at 1113 ("[T]he alien must demonstrate that 'release would not pose a danger to property or persons,' even though section [1226(a)] does not explicitly contain such a requirement.")).

Aparicio argues that, by allocating the burden to him to prove that he was not a flight risk or a danger to the community during his bond hearing and thereby extending his detention, Respondents violated his due process rights.[9] As Aparicio points out in his petition, (Pet. ¶¶ 33–35), and as counsel for Defendant admitted during the February 25, 2021 hearing, in the overwhelming majority of circumstances where the Government puts an individual's liberty at stake, the Government is compelled to bear the burden of proving that the detention is necessary, *see, e.g.*, *Addington v. Texas*, 441 U.S. 418, 425 (1979) (stating that the Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection" and placing the burden of proof by "clear and convincing" evidence on the Government where an individual's liberty interest in the outcome of a civil commitment proceeding was at stake); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (holding that to justify confinement of an insanity acquittee, the State must show "by clear and convincing

_____

[9] Aparicio also argues that Respondents' actions contravened the Immigration and Nationality Act ("INA") and the Administrative Procedures Act ("APA"). (Pet. Mem. 8.) As Aparicio's petition is granted on different grounds, I need not assess those additional bases for his requested relief today.

evidence that the individual is mentally ill and dangerous"); *Velasco Lopez II*, 978 F.3d at 856

(collecting cases); *see also Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011) ("We are not

persuaded by the government's argument that we should deviate from this principle and apply

the lower preponderance of the evidence standard because the liberty interest at stake here is less

than for people subject to an initial finding of removal or other types of civil commitment.").

The Government's unprecedented deviation from this standard when it comes to § 1226(a) bond

proceedings is troubling.  While I find persuasive Aparicio's argument that the Due Process

Clause of the Fifth Amendment requires the Government to bear the burden of justifying

continued detention of an immigrant under § 1226(a) by clear and convincing evidence under

any circumstance, in the absence of a specific holding by the Second Circuit and in light of the

result yielded by the *Mathews* analysis below, I need not reach the constitutional question.  For

the reasons that follow, I find that due process requires the Government to shoulder the burden at

a bond hearing to justify Aparicio's continued incarceration by clear and convincing evidence.

### A.    *Applicable Law*

The Fifth Amendment protects individuals "from imprisonment —from government

custody, detention, or other forms of physical restraint," void of adequate procedural protections.

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  These due process protections extend to

immigrants in the context of deportation proceedings.  *Zuniga-Perez v. Sessions*, 897 F.3d 114,

122 (2d Cir. 2018) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  "At the core of due

process is the right to notice of the nature of the charges and a meaningful opportunity to be

heard."  *Nolasco v. Holder*, 637 F.3d 159, 163 (2d Cir. 2011) (quoting *Brown v. Ashcroft*, 360

F.3d 346, 350 (2d Cir. 2004)).  Moreover, habeas review based on due process contentions is

"not limited to evaluating the lawfulness of detention when it is first imposed," but may extend

to "the legality of [noncitizens'] ongoing detention." *Velasco Lopez II*, 978 F.3d at 850. "[A]s the period of . . . confinement grows, so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Id.* (quoting *Zadvydas*, 533 U.S. at 701) (internal quotation marks omitted).

### B. *Application*

Aparicio urges me to follow "the ever-growing body of persuasive authority" in the Second Circuit and conclude that the Due Process Clause of the Fifth Amendment requires the Government to bear the burden of justifying continued detention of an immigrant under § 1226(a) by clear and convincing evidence. *Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *1 (S.D.N.Y. May 15, 2019) (hereinafter *Velasco Lopez I*), *aff'd*, 978 F.3d 842 (2d Cir. 2020). Respondents contend that the Constitution does not require such an allocation of the burden, and that Aparicio's constitutional argument is foreclosed by the Second Circuit's decision in *Velasco Lopez II*, 978 F.3d 842 (2d Cir. 2020). (Resp. Opp. Mem. 15.) They further argue that applying the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), confirms that Aparicio was afforded a bond hearing consistent with due process. (Resp. Opp. Mem. 18.) I address each of Respondents' arguments in turn.

### 1. Second Circuit Precedent Does Not Foreclose Aparicio's Fifth Amendment Claim

As an initial matter, I am not persuaded by Respondents' contention that Aparicio cannot state a due process claim in light of the Second Circuit's decision in *Velasco Lopez II*. Neither *Velasco Lopez II* or any other binding appellate authority governs the question of whether the Fifth Amendment requires the Government to bear the burden of justifying continued detention of an immigrant under § 1226(a) by clear and convincing evidence.

Although the Second Circuit held in 2015 that due process requires that the Government

bear the burden of proof in bail hearings in § 1226(c) detentions, *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), that decision was abrogated by *Jennings v. Rodriguez*, where the Supreme Court held that the statutory text of § 1226(a) does not require periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that an alien's continued detention is necessary, 138 S. Ct. 830, 847–48 (2018).  However, the Court expressly declined to reach the issue of what protections were constitutionally mandated and remanded *Jennings* to the district court to address the constitutional arguments.  *Id*. at 851. The matter remains pending before the district court in the Central District of California.

Although the Second Circuit has not addressed the precise question presented in the instant case, Aparicio cites several district court cases as persuasive authority for the proposition that due process mandates placing the burden of proof on the Government rather than the individual against whom detention is sought in § 1226(a) bail hearings.  *See, e.g.*, *Velasco Lopez I*, 2019 WL 2655806, at *3 ("While *Lora* is no longer binding authority, every court to have considered the constitutional issue presented in this case has agreed with [its] persuasive logic— under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a)."); *Darko v. Sessions*, 342 F. Supp. 3d 429, 430–31 (S.D.N.Y. 2018) ("Joining with a growing body of persuasive authority, the Court concludes that the Due Process Clause required that the Government bear the burden of proving that Ms. Darko's detention was justified, and that it was required to meet its burden by clear and convincing evidence."); *Linares Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *4–5 (S.D.N.Y. Oct. 17, 2018) (granting new § 1226(a) bond hearing in which the Government was to bear the burden of proof and noting that a "slew of cases" apply this protection to immigrants detained under both § 1226(a) and § 1226(c)).

As the *Jennings* Court pointed out, on its face, § 1226(a) does not state that the Government must bear the burden of proof in bond proceedings.  Similarly, nothing in the plain text of the statute requires that the detainee prove that he or she does not pose a risk of flight or danger to society.  *See Adeniji*, 22 I. & N. Dec. at 1113 (stating that "[section [1226(a)] does not explicitly contain . . .  a requirement" that the alien prove that his or her "release would not pose a danger to property or persons.").  In fact, § 1226(a)'s silence regarding the allocation of the burden of proof in bond proceedings bears stark contrast to § 1226(c), which explicitly provides that "[t]he Attorney General may release an alien described in paragraph [(c)(1)] only if . . . the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  8 U.S.C. § 1226(c)(2); *see also Nken v. Holder*, 556 U.S. 418, 430 (2009) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted).  Accordingly, neither *Jennings* nor the dictates of § 1226(a) itself mandate placing the burden on the detainee to prove that he or she is not a risk of flight or danger to society, as the Government has done here.

Respondents nonetheless assert that Aparicio's argument is undercut by *Velasco Lopez II*, where the Second Circuit did not affirm the district's court holding on the ground that allocation of the burden on the immigrant at a § 1226(a) bond hearing necessarily violates due process, but instead concluded that the immigrant's "prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process."  978 F.3d at 855.  In holding so, the Second Circuit declined to "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond

hearing with a shifted burden," but noted that "[t]he Supreme Court has held that noncitizens who have been ordered removed for having committed serious criminal offenses or having a long criminal history cannot be detained indefinitely, and a presumptively constitutional period of detention does not exceed six months." *Id*. at 855 n.13 (citing *Zadvydas*, 533 U.S. at 701). Respondents construe the additional due process protections mandated by *Velasco Lopez II* to apply only to petitions involving prolonged detentions under § 1226(a), and distinguish the instant case on the basis that Aparicio's detention is not unduly prolonged.  (Resp. Opp. Mem. 17.)  They submit that Aparicio's removal proceedings have "moved swiftly, notwithstanding logistical challenges posed by the COVID-19 pandemic and considering the many continuances requested by Aparicio."  (*Id*.)  Moreover—in an apparent effort to limit the impact of the time that Aparicio has been detained—Respondents contend that Aparicio was responsible for any delays in obtaining an initial bond hearing, and that after he submitted a bond request that he did not withdraw, the Government held a bond hearing within a week.  (*Id.* at 18.)

Respondents do not convince me that the instant case is materially distinguishable from the facts at issue in *Velasco Lopez II*.  In coming to a determination that "individuals subject to prolonged detention under § 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing," *Velasco Lopez II*, 978 F.3d at 854, the Second Circuit did not state that this holding was conditioned on whether the length of the detention was attributable to the fault of the detainee.[10]  Rather, the *Velasco Lopez II* court concluded that the petitioner's fifteen-month incarceration was prolonged where it "had lasted almost ten times longer than the length

---

[10] In seeking to attribute the length of Petitioner's detention to his own actions, the Government ignores the fact that Aparicio's detention is the result of the discretionary act by the Government under § 1226(a) in seeking detention and the IJ's determination to continue Aparicio's detention, not by his failure to be prepared for a bond hearing. There is no reason to think that had the bond hearing been held at an earlier date that the result would have been different.

of detention under § 1226(c) in the vast majority of cases."  978 F.3d at 852; *see Demore v. Kim*, 538 U.S. 510, 529 (2003) (noting that detention under § 1226(c) lasts roughly a month and a half in 85% of cases, and an average of four months in the minority of cases in which the noncitizen chooses to appeal); *see also Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (holding that the presumptive reasonable limit to post-removal detention is six months).  In fact, the *Velasco Lopez II* court noted that prolonged detention is often a feature of § 1226(a) determinations, "because it continues until all proceedings and appeals are concluded" and "[a]bsent release on bond, detention lasts through the initial removal determination proceedings (which themselves can take months or years) and all inter-agency and federal court appeals, even where an individual has prevailed and the Government appeals."  978 F.3d at 852.  Here, Aparicio's detention has stretched out to eight times the typical length of a § 1226(c) detention, *see Demore*, 538 U.S. at 529, and twice the length that the Supreme Court found to be the limit of constitutionality in post-removal cases, *see Zadvydas*, 533 U.S. at 701.  As Aparicio's merits appeal remains pending, it is as yet unclear how much longer his incarceration will continue.  At the February 25, 2021 hearing, counsel for Aparicio represented that the earliest that a detainee could expect the Board to render a decision on a merits appeal would be approximately five months from the date the appeal was fully briefed.  Here Aparicio's merits appeal was fully briefed at the end of January 2021; therefore, the earliest a decision might be expected is around June 2021.  If he does not prevail, Aparicio intends to appeal the Board's decision to the Second Circuit.  Furthermore, in urging that the length of Aparicio's detention should be discounted because it was in part prolonged by Aparicio's requests for extensions—due in large part to the restrictions and limitations brought about by the COVID-19 pandemic—to adequately prepare and gather evidence for his bond hearing, Respondents ask me to render a decision that would

force immigrants to trade-off the quality of their bond application for expedience lest the delay

be held against them in § 1226(a) detention relief proceedings.  Under the circumstances

presented here, I decline to make such a determination.  As Aparicio's counsel pointed out, many

of Aparicio's difficulties in arranging communication with counsel to robustly defend himself in

his bond and merits proceedings are very much a product of his incarceration by the Government

in the first place.  In fact, since March 2020, in-person visitation has been limited due to COVID-

19 safety protocols implemented by the jail.  (Pet.'s Mem. 19; Doc. 4-1, at ¶ 4); *see United States*

*v. Batista*, No. 19 CR. 2 (JFK), 2020 WL 3249233, at *4 (S.D.N.Y. June 16, 2020) (noting that

the Orange County Jail has enacted "strict quarantine and isolation protocols; restrictions on

inmate transfers and visitations; . . . and heightened screening procedures"); *United States v.*

*Sanchez*, No. 1:18-cr-00833-VSB, Doc. 64, at 5 (noting that as part of the Jail's COVID-19

prevention plan, "all civilian and volunteer visits have been suspended" and attorneys may only

conduct visits remotely); ICE, *Guidance on COVID-19, Frequently Asked Questions*,

https://www.ice.gov/coronavirus (last visited Feb. 26, 2020) ("ICE has temporarily suspended

social visitation in all of its detention facilities.  ICE recognizes the considerable impact of

suspending personal visitation and has requested wardens and facility administrators maximize

detainee use of teleconferencing, video visitation (e.g., Skype, FaceTime), email, and/or tablets,

with extended hours where possible.").

       In any case, I find Respondents' interpretation of the Second Circuit's decision as holding

that allocating the burden on the detainee at an initial bond hearing "does not violate due process

absent prolonged detention" proves too much and does not preclude granting Petitioner the relief

he seeks.  (Resp. Opp. Mem. 16.)  *Velasco Lopez II* declined to "establish a bright-line rule for

when due process entitles an individual detained under § 1226(a) to a new bond hearing with a

shifted burden." *Velasco Lopez II*, 978 F.3d at 855 n.13.  Therefore, *Velasco Lopez II* does not require that I reject the relief Aparicio seeks, and I see no need to draw such a line here.  Instead, I will proceed to evaluate whether the facts of this case call for a renewed hearing with a shifted burden of proof.

### 2.   Aparicio Did Not Receive Due Process Under *Mathews*

In order to assess whether Aparicio's "ongoing incarceration posed due process concerns at the time of his habeas filing and whether additional procedural protections then became necessary," I will follow the Second Circuit's lead in *Velasco Lopez II*, 978 F.3d at 851, and apply the three-factor balancing test elucidated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under this test, I consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

The first *Mathews* factor weighs strongly in Aparicio's favor.  The private interest implicated by official action in detention pursuant to § 1226(a) is "the most significant liberty interest there is—the interest in being free from imprisonment."  *Velasco Lopez II*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  The facts in the instant case are nearly parallel to those in *Velasco Lopez II*, where the Second Circuit determined that "the first *Mathews* factor cut[] sharply in [the petitioner's] favor."  *Id.* at 852.  *Velasco Lopez II* involved a detainee who had previously pled guilty to DWAI and was subsequently arrested for other vehicular infractions for which he was not convicted.  *Id.* at 846–47.  Like Velasco Lopez, Aparicio has been incarcerated for over a year "under conditions indistinguishable from those

imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes." *Id*. at 850.  Indeed, the conditions Aparicio has endured are more severe than those in *Velasco Lopez* since his entire period of detention—save perhaps one month—has been during the COVID-19 pandemic with the resulting lockdowns, isolation, and fear of disease.  In view of the heightened risk and stress that Aparicio faces as a result of his incarceration in the midst of a pandemic, the impact on Aparicio's liberty interest is all the more acute.  *See Basank v. Decker*, 449 F. Supp. 3d 205, 216 (S.D.N.Y. 2020) (granting temporary restraining order releasing detainees confined for civil violations of the immigration laws due to the highly unusual circumstances posed by the COVID-19 crisis and noting that detention of people in jails "should be a measure of last resort, particularly during this crisis") (citation omitted); *United States v. Skelos*, No. 15-CR-317 (KMW), 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) ("Jails and prison are powder kegs for infection. . . . Realistically, the best— perhaps the only—way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible.") (citations omitted);  *see also, e.g*., *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *6 (S.D.N.Y. Apr. 10, 2020) (holding that petitioners were likely to succeed on the merits of their claim that remaining in an ICE detention center where COVID-19 is present and without adequate protection for their health violates their due process rights); *Coronel v. Decker*, 449 F. Supp. 3d 274, 283, 287 (S.D.N.Y. 2020) (noting the "unprecedented threat COVID-19 poses to detained individuals" and holding that civil immigration detainees demonstrated a likelihood of success on their claim that the Due Process Clause entitled them to an expeditious bond hearing and release from custody until such hearing could be arranged); *United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 568–70 (S.D.N.Y. 2020) (finding extraordinary and compelling

circumstances warranting compassionate release where keeping petitioner incarcerated in prison during the COVID-19 pandemic posed an "intolerable risk" and "each day, perhaps each hour, that elapses threatens incarcerated defendants with greater peril") (internal quotation marks omitted).

Moreover, Aparicio's detention pursuant to § 1226(a) is the result of his being an "alien present in the United States who has not been admitted or paroled," (*see* Resp. Return, Ex. 2), and "not the result of a criminal adjudication," *Velasco Lopez II*, 978 F.3d at 851, 854 (contrasting § 1226(a) detainees with individuals with criminal records mandatorily detained under § 1226(c)); *see also Linares Martinez*, 2018 WL 5023946, at *4 (noting that § 1226(c) "concerns criminal aliens who are presumptively unbailable" while § 1226(a) "governs the detention of non-criminal aliens, including ordinary visa violators") (internal quotation marks omitted). It bears noting—though ICE's detention of Aparicio was not grounded in this determination—that Aparicio's sole conviction is for DWAI in violation of VTL § 1192(1), an offense "treated as a 'traffic infraction' by the state, and . . . punishable by a maximum fine of $500 and up to fifteen days' imprisonment," *United States v. Potes-Castillo*, 638 F.3d 106, 108 (2d Cir. 2011) (citing N.Y. Veh. & Traf. Law § 1193(1)), a maximum duration that pales in comparison to Aparicio's now twelve-month-long detention. Apart from convictions from over a decade ago, Aparicio has not been found guilty of any other charges, including those pending against him as a result of his most recent arrests. Ironically, however, Aparicio has been incarcerated for over a year in the middle of COVID-19 pandemic, and has received fewer procedural protections than those afforded to pre-trial detainees. Specifically, Aparicio has "no right to court-appointed counsel and no regular right to judicial review of his incarceration," nor any "rights analogous to Sixth Amendment speedy trial rights." *Velasco Lopez II*, 978 F.3d at

20

851.

Regarding the second prong, I find that Aparicio faced a high risk of erroneous deprivation under the current practice of placing the burden on a petitioner at § 1226(a) bond hearings, and may continue to suffer undue incarceration if he is not granted a renewed bond hearing where the Government bears the burden.  Due to the remoteness of the jail at which Aparicio is incarcerated from his place of residence, the limitations on in-person visiting necessitated by the COVID-19 pandemic, and the technical problems with the videoconferencing software used by the jail contractor, Aparicio has been severely circumscribed in his ability to confer with counsel and expeditiously collect the evidence needed to defend himself in his bond hearing.  Combined with the fact that he bore the burden of establishing that he was not a danger to the community, these limitations seriously impacted Aparicio's ability to secure bail. Furthermore, should the Board ultimately deny Aparicio's merits appeal, his continued detention will further hinder his ability to litigate his appeal before the Second Circuit.

Moreover, Aparicio has "tendered a factual record that the Government might find difficult to overcome if it had to demonstrate affirmatively that [Aparicio] poses a risk of flight or danger to the community necessitating his continued detention." *Arana v. Decker*, No. 20 CV 4104-LTS, 2020 WL 7342833, at *5 (S.D.N.Y. Dec. 14, 2020).  He has produced supportive letters from his family, friends, social workers, employers, and other members of the community, evidence that he engaged in rehabilitation after his first DWAI offense and intends to seek continued rehabilitation provided his release from detention, as well as evidence of the integral role he plays in his family.  "Against this, the mere fact of a charge that he may be able to resolve as a violation may not be sufficient to carry the Government's burden of demonstrating that [Aparicio] poses a risk of flight or danger to the community." *Id*.  As such, the risk of

erroneous deprivation to Aparicio under the status quo is significant, and he stands a far better

chance of securing bail if the burden of proof is instead placed on the Government.

The third *Mathews* factor also militates in favor of granting Aparicio additional

procedural safeguards.  Although the Government argues that it has wide discretion to place

individuals in detention during deportation proceedings, the general constitutionality of detention

pending removal proceedings is not in dispute here.  Rather, this case concerns "the prolonged

detention of noncitizens who are neither dangerous nor a risk of flight," for which the

Government has no discernible interest.  *Velasco Lopez II*, 978 F.3d at 854.  This factor weighs

all the more heavily in favor of Aparicio's release given the risk of spread of COVID-19 under

the current conditions of his incarceration.  *See, e.g.*, *Basank*, 449 F. Supp. 3d at 216 ("In the

highly unusual circumstances posed by the COVID-19 crisis, the continued detention of aging or

ill civil detainees does not serve the public's interest.").  The risks associated with COVID-19

are elevated for detainees held in ICE facilities because of closed detention settings enabling

spread of disease, systemic delays in access to care, failure to provide continuation of treatment,

failure to provide adequate treatment of underlying conditions, and the isolation and lack of

visitation exacerbating mental health conditions.  *Velesaca v. Decker*, 458 F. Supp. 3d 224, 230

(S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20-2153, 2020 WL 7973940

(2d Cir. Oct. 13, 2020).  "[T]hese facilities are dangerously under-equipped and ill-prepared to

prevent and manage a COVID-19 outbreak, which would result in severe harm to detained

individuals, jail and prison staff, and the broader community."  *Id*. at 231.  Moreover, to date,

ICE has not developed a comprehensive plan to vaccinate the almost 14,000 immigrants in its

custody against COVID-19.[11]

---

[11] *See* Nicole Einbinder et al., *After an Insider Investigation, ICE Reverses its Claim that it Asked States to Vaccinate Detained Immigrants*, Business Insider (Feb. 23, 2021, 8:35 a.m.), https://www.businessinsider.com/ice-

Furthermore, shifting the burden of proof to the Government to justify continued detention promotes both the Government's and the public's interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez II*, 978 F.3d at 854. Nor would such an allocation of the burden substantially impose an undue administrative burden on the Government. As the Second Circuit noted in *Velasco Lopez II*, "ICE and DHS can access the records of other federal agencies and local law enforcement and routinely do so for purposes of the merits proceedings." *Id.* at 855 (citing 8 U.S.C. § 1229a(c)(3)).

Respondents' argument that the Government's regulatory interest in detention pending deportation is even stronger in this case as "an immigration judge has already denied relief and ordered an individual removed," (Resp. Opp. Mem. 19), is both hasty and inapposite. Although Respondents are correct to suggest that, where an alien is presumptively to be removed from the United States, "the continued detention of the alien will be more reasonable than if the alien had at least some possibility of remaining in the country," *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018), this is not the case here. As the BIA has not yet determined whether to grant Aparicio's merits appeal, his removal is not, as Respondents would have it, a foregone conclusion. Respondents cite *Nikolic v. Decker* for the proposition that a prolonged detention claim may be denied where "removal proceedings have concluded" and "[a]ll that remains to be resolved is [the petitioner's] appeal to the BIA and, if he so chooses, to the appropriate court of appeals." No. 19-CV-6047-LTS, 2019 WL 5887500, at *5 (S.D.N.Y.

---

walks-back-covid-vaccine-claim-deflects-responsibility-2021-2. None of the health departments in the forty states where ICE detention facilities are located have confirmed that ICE has contacted them about vaccination plans for detainees. *Id.* In fact, the New York health department redirected reporters' questions regarding vaccinating immigrant detainees to ICE, suggesting that it was not taking responsibility for vaccinating immigrants. *Id.*; *see also Jones v. Wolf*, No. 20-cv-361-LJV (W.D.N.Y. 2021), Doc. 162 (minute entry by Judge Lawrence Vilardo ordering the Government to submit a plan for making the vaccine available to eligible ICE detainees at the Buffalo Federal Detention Facility); *ICE Ordered to Create Vaccine Plan for Detainees at NY Facility*, NBC New York (Feb. 27, 2021, 2:01 p.m.), https://www.nbcnewyork.com/news/local/ice-ordered-to-create-vaccine-plan-for-detainees-at-ny-facility/2914137 (describing Judge Vilardo's order as "the first of its kind in the country").

Nov. 12, 2019). However, that case concerned mandatory detention pursuant to § 1226(c), which governs "presumptively unbailable" aliens who have already been deemed guilty of criminal offenses. *Linares Martinez*, 2018 WL 5023946, at *4. "[B]ecause the mandatory detention statute is premised upon the alien's *presumed* deportability and the government's *presumed* ability to reach the removal decision within a brief period of time, as the actualization of these presumptions grows weaker or more attenuated, the categorical nature of the detention will become increasingly unreasonable." *Sajous*, 2018 WL 2357266, at *11 (internal quotation marks omitted). Indeed, under the INA's provisions for cancellation of removal in certain circumstances, individuals detained pursuant to § 1226(c) would generally be automatically disqualified for failure to satisfy the requirement that they not have been "convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title." 8 U.S.C. § 1229b(b)(1)(C). In contrast, here, where Aparicio stands a chance of eligibility for cancellation of removal, Aparicio's continued detention lacks the same justification. In any case, even in cases of prolonged mandatory detention under § 1226(c), "federal courts have found that the habeas petitioner's Fifth Amendment Due Process rights were violated." *Hylton v. Decker*, No. 20 CV. 5994 (JGK), 2020 WL 6879067, at *2 (S.D.N.Y. Nov. 24, 2020) (collecting cases). It stands to reason that Aparicio's prolonged detention under § 1226(a) is even more constitutionally problematic.

In addition, Aparicio has asserted defenses to removal, further diminishing the presumption of imminent removal. *See Sajous*, 2018 WL 2357266, at *11. In his appeal from the IJ's denial of his application for cancellation of removal, Aparicio argues (1) that the IJ wrongly held that he lacked good moral character on the erroneous consideration of a criminal conviction that occurred beyond the requisite time period and the mistaken assumption that he

24

had a substance abuse problem, and (2) that the IJ impermissibly cherrypicked and considered

late-filed evidence in his written decision that he had previously excluded on account of a one-

day filing error without giving Aparicio an opportunity to explain or contextualize the evidence

that the IJ considered after the fact.  (Resp. Return, Ex. 12, at 12.)  In view of Aparicio's pending

appeal, I decline to prejudge the BIA's future decision by holding that Aparicio's removal is all

but inevitable and to justify his continued detention on that basis.  In fact, since Aparicio has

submitted that his detention hinders his ability to adequately defend against his deportation, I

find Respondents' rationale for his continued incarceration all the weaker.  Short of any viable

argument that granting Aparicio relief from detention would be moot in face of his impending

deportation, the Government has failed to show that it has any interest in the continued

incarceration of an individual who it cannot show to be either a flight risk or a danger to his

community.

Together, all three *Mathews* factors guide me towards a determination that the

Government denied Aparicio due process by subjecting him to prolonged detention under §

1226(a) without affording him a bond hearing where the Government carried the burden by clear

and convincing evidence of justifying his detention.  As Aparicio's incarceration passes its one-

year mark, I find that a renewed bond hearing at which the Government must prove by clear and

convincing evidence that Aparicio is either a flight risk or a danger to the community is

warranted.  *See Velasco Lopez II*, 978 F.3d at 856 ("[I]t is improper to allocate the risk of error

evenly between the individual and the Government when the potential injury is as significant as

the individual's liberty.  Accordingly, we conclude that a clear and convincing evidence standard

of proof provides the appropriate level of procedural protection.").  Such a remedy "strikes a fair

balance between the rights of the individual and the legitimate concerns of the state."  *Id*. at 857

(quoting *Addington*, 441 U.S. at 431).

### III.   <u>Conclusion</u>

For the foregoing reasons, Aparicio's petition for a writ of habeas corpus is hereby GRANTED in part.  The Government is ORDERED to take Aparicio before an immigration judge for an individualized bond hearing within ten calendar days of this Opinion & Order.  At that hearing, the Government shall bear the burden of demonstrating, by clear and convincing evidence, that Aparicio is a danger to the community or a risk of flight.  In the event the Government fails to provide Aparicio with such a bond hearing within ten calendar days, the Government is ORDERED to release Aparicio immediately on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General" or on "conditional parole."  § 1226(a)(1)–(2).

In light of this decision, Aparicio's request for a temporary restraining order and preliminary injunction seeking the same relief is moot.  As this Opinion & Order terminates the petition, Aparicio's request that I enjoin Respondents from removing him from the Court's jurisdiction during the course of habeas proceedings is also moot.  The Clerk of Court is respectfully directed to enter judgment in accordance with this Opinion and Order, and close this case.

SO ORDERED.

Dated: March 3, 2021
      New York, New York

                                      Vernon S. Broderick
                                      United States District Judge